UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RVRG HOLDINGS LLC

          Plaintiff

-against-

STARIT GROUP LIMITED

          Defendant

Case No: **24-cv-7530**

**SEALING ENVELOPE COVER SHEET FOR HIGHLY SENSITIVE DOCUMENT**

Submitted By: Judge Andrew L. Carter, Jr.

Plaintiff: ☐     Defendant: ☐

Attorney's Name:

Firm Name:

Address:

City:     State:     Zip:

Phone Number:

Contents of Envelope:

Order (10/23/2024)

Order Dated: 10/23/24

_[signature: Andrew L. Carter]_

U.S.D.J./U.S. MAGISTRATE JUDGE

RECEIVED BY:

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*RVRG Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RVRG HOLDINGS LLC,<br><br>*Plaintiff*<br><br>v.<br><br>STARIT GROUP LIMITED,<br><br>*Defendant* | **CIVIL ACTION NO.: 24-cv-7530 (ALC)**<br><br>**AMENDED TEMPORARY RESTRAINING ORDER**<br><br>**FILED UNDER SEAL** |

# GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Rhude** | RVRG Holdings LLC |
| **Defendant** | Defendant Starit Group Limited |
| **Superbuy** | The Superbuy.com online platform, owned and operated by Defendant, which aids consumers across the world and specifically consumers residing in the U.S., including New York, by locating, consolidating, marketing, promoting, offering for sale, selling, purchasing, warehousing and shipping goods from third-party China focused marketplace platforms |
| **Shopify** | Shopify Inc., a Canadian company with an address of 150 Elgin Street, 8th Floor, Ottawa, ON K2P 1L4, Canada, and any and all affiliated companies, which operate a cloud-based e-commerce platform, available at www.shopify.com, that enables users to create online stores, manage their businesses, among other things |
| **1688** | 1688, operating as 1688.com, is owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **Taobao** | Taobao, operating as Taobao.com, is owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **Tmall** | Tmall, operating as Tmall.com, is also owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **China Focused Marketplace Platforms** | 1688, Taobao and Tmall |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 60 East 42nd Street, Suite 1250, New York, New York 10165 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Defendant's Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing alternative service and 5) an order authorizing expedited discovery |
| **Dirocie Dec.** | Declaration of Yira Dirocie in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |

1

| **Rhude Products** | A globally successful ready-to-wear brand of men's and women's apparel, accessories, and footwear |
|---|---|
| **Rhude Marks** | U.S. Trademark Registration Nos.: 5,827,712 for "RHUDE" for a variety of goods in Class 18; 5,827,706 for "RHUDE" for goods in Class 25; and 5,385,699 for "RHUDE" for a variety of goods in Class 25 |
| **Counterfeit Products** | Products bearing or used in connection with the Rhude Marks, and/or products in packaging and/or containing labels bearing the Rhude Marks, and/or bearing or used in connection with marks that are confusingly similar to the Rhude Marks and/or products that are identical or confusingly similar to the Rhude Products |
| **Infringing Listings** | Defendant's listings for Counterfeit Products |
| **Merchant Storefronts** | Any and all storefronts through which sellers on the China Focused Marketplace Platforms to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are promoted and/or advertised by Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendant's Assets** | Any and all money, securities or other property or assets of Defendant (whether said assets are located in the U.S. or abroad) |
| **Defendant's Financial Accounts** | Any and all financial accounts associated with or utilized by Defendant (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), AUS Merchant Services, Inc. and Alipay Merchant Services Pte. Ltd. ("Alipay"), Stripe Payments Canada, Ltd. ("Stripe"), Visa Inc. ("Visa"), American Express Company ("American Express"), Mastercard Inc. ("Mastercard"), Discover Financial Services, Inc. ("Discover"), Google LLC payment services (e.g. Google Pay), Apple Inc. payment services (e.g. Apple Pay), JPMorgan Chase Bank, NA ("Chase"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions Inc. ("PingPong"), Airwallex (Hong Kong) Limited ("Airwallex HK"), Airwallex (UK) Limited, Worldpay (HK) Limited ("Worldpay"), World First UK Ltd. ("World First"), Bank of China ("BOC"), Citibank N.A. ("Citibank"), Green Dot Bank, HSBC Holdings PLC ("HSBC"), DBS Bank (Hong Kong) Limited ("DBS") and/or any entities affiliated with those listed herein holding Defendant's Assets |

On this day, the Court considered Plaintiff's *ex parte* application for the following: 1) a temporary restraining order; 2) an order restraining Defendant's Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery against Defendants and Financial Institutions in light of Defendant's intentional and willful advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging and shipping of Counterfeit Products.[1]  Having reviewed the Application, Declarations of Yira Dirocie and Gabriela N. Nastasi, along with exhibits attached thereto and other evidence submitted in support thereof, the Court makes the following findings of fact and conclusions of law:

## PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW

1. Rhude, founded in 2015 by self-taught designer Rhuigi Villaseñor, is a globally successful ready-to-wear brand and design venture evoking streetwear and luxury fashion. Rhude distributes the Rhude Products, including men's and women's apparel, accessories, and footwear, through various channels of trade in the United States and abroad

2. The Rhude Products are marketed under the Rhude Marks. The Rhude brand is recognized for its vintage nostalgia, American typography and iconography and visual commentary on Los Angeles style and culture.

3. The Rhude Products are sold direct to consumer via Rhude's official website, https://rh-ude.com, and distributed through multi-brand retailers including, but not limited to, Nordstrom, Bergdorf Goodman, Neiman Marcus, Saks Fifth Avenue and SSENSE.

4. While RVRG has gained significant common law trademark and other rights in its Rhude Marks and Rhude Products through use, advertising and promotion, RVRG also protected its

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

valuable rights by filing for and obtaining federal trademark registrations.

5. For example, RVRG owns the following U.S. Trademark Registration Nos.: 5,827,712 for "RHUDE" for a variety of goods in Class 18; 5,827,706 for "RHUDE" for goods in Class 25; and 5,385,699 for "RHUDE" for a variety of goods in Class 25.

6. Defendant is advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products through the Superbuy e-commerce platform.

7. Defendant is not, nor have it ever been, an authorized distributor or licensee of the Rhude Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Defendant's use of the Rhude Marks, nor has Plaintiff consented to Defendant's use of marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Rhude Marks.

8. Plaintiff is likely to prevail on its Lanham Act and related common law claims at trial.

9. As a result of Defendant's counterfeiting activities, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries before Defendant can be heard in opposition, unless Plaintiff's Application for *ex parte* relief is granted:

   a. Defendant has advertised, listed, promoted, purchased, validated, reviewed, warehoused, packaged, shipped, exported and/or otherwise facilitated the sale of Counterfeit Products that infringe the Rhude Marks;

   b. Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality

of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Rhude Products; and

c. Plaintiff has well-founded fears that if it proceeds on notice to Defendant on this Application, Defendant will: (i) secret, conceal, destroy, alter, sell-off, transfer or otherwise dispose of Counterfeit Products or other goods that infringe the Rhude Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (ii) inform its suppliers and others of Plaintiff's claims with the result being that those suppliers and others may also secret, conceal, sell-off or otherwise dispose of Counterfeit Products or other goods infringing the Rhude Marks, the means of obtaining or manufacturing such Counterfeit Products, and records relating thereto that are in their possession or under their control, (iii) and/or secret, conceal, transfer or otherwise dispose of its ill-gotten proceeds from its sales and/or facilitation of sales of Counterfeit Products or other goods infringing the Rhude Marks and records relating thereto that are in its possession or under its control.

10. The balance of potential harm to Defendant of being prevented from continuing to profit from its illegal and infringing activities if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with the Rhude Marks and to its reputations if a temporary restraining order is not issued.

11. Public interest favors issuance of the temporary restraining order in order to protect Plaintiff's interests in and to its Rhude Marks, and to protect the public from being deceived and defrauded by Defendant's passing off of its substandard Counterfeit Products as Rhude Products.

12. Plaintiff has not publicized its request for a temporary restraining order in any way.

13. Service on Defendant via Federal Express is reasonably calculated to result in proper notice to Defendant.

14. If Defendant is given notice of the Application, it is likely to secret, conceal, transfer or otherwise dispose of its ill-gotten proceeds from its sales and/or facilitating sales of Counterfeit Products or other goods infringing the Rhude Marks. Therefore, good cause exists for granting Plaintiff's request for an asset restraining order. It typically takes the Financial Institutions a minimum of five (5) days after service of the Order to locate, attach and freeze Defendant's Assets and/or Defendants' Financial Accounts. As such, the Court allows enough time for Plaintiff to serve the Financial Institutions with this Order, and for the Financial Institutions to comply with the Paragraphs I(B)(1) and I(C)(1) of this Order, respectively, before requiring service on Defendant.

15. Similarly, if Defendant is given notice of the Application, it is likely to destroy, move, hide or otherwise make inaccessible to Plaintiff the records and documents relating to Defendant's advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating sales of Counterfeit Products. Therefore, Plaintiff has good cause to be granted expedited discovery.

## ORDER

Based on the foregoing findings of fact and conclusions of law, Plaintiff's Application is hereby **GRANTED** as follows:

### I.    Temporary Restraining Order

A. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendant is hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen

(14) days from the date of this order, and for such further period as may be provided by order of the Court:

1) advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products, or any other products bearing the Rhude Marks and/or marks that are confusingly similar to, identical to and constitute a counterfeiting or infringement of the Rhude Marks;

2) directly or indirectly infringing in any manner Plaintiff's Rhude Marks;

3) using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Rhude Marks to identify any goods or service not authorized by Plaintiff;

4) using Plaintiff's Rhude Marks and/or any other marks that are confusingly similar to the Rhude Marks on or in connection with advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products;

5) using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product advertised, listed, promoted, purchased, validated, reviewed, warehoused, packaged, shipped, exported and/or otherwise sold by Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant and Defendant's commercial activities and Plaintiff;

6)     secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their Assets and the advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products;

7)     knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(1) through I(A)(6) above and I(B)(1) below.

B. IT IS HEREBY ORDERED, as sufficient cause has been shown, that Defendant and all persons in active concert and participation with them who receive actual notice of this Order, including the Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions for fourteen (14) days from the date of this order, and for such further period as may be provided by order of this Court:

1)     secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendant's Assets from or to Defendant's Financial Accounts until further ordered by this Court.

## II.    Order to Show Cause Why A Preliminary Injunction Should Not Issue And Order Of Notice

A. Defendant is hereby ORDERED to show cause before this Court on November 4, 2024 at 1 p.m. or at such other time that this Court deems appropriate, why a preliminary injunction, pursuant to Fed. R. Civ. P. 65(a), should not issue. All Parties shall appear and should contact the Court at 1-888-363-4749 (access code: 3768660).

B. IT IS FURTHER ORDERED that opposing papers, if any, shall be filed electronically with the Court and served on Plaintiff's counsel by delivering copies thereof to the office of Epstein Drangel LLP at 60 East 42nd Street, Suite 1250, New York, NY 10165, Attn: Jason M. Drangel on or before October 30, 2024. Plaintiff shall file any Reply papers on or before November 1, 2024.

C. IT IS FURTHER ORDERED that Defendant is hereby given notice that failure to appear at the show cause hearing scheduled in **Paragraph II(A)** above may result in the imposition of a preliminary injunction against them pursuant to Fed. R. Civ. P. 65, which may take effect immediately upon the expiration of this Order, and may extend throughout the length of the litigation under the same terms and conditions set forth in this Order.

### III. Asset Restraining Order

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 64 and 65 and N.Y. C.P.L.R. 6201 and this Court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order, the Financial Institutions shall locate and attach Defendant's Financial Accounts and shall provide written confirmation of such attachment to Plaintiff's counsel.

### IV. Order Authorizing Bifurcated and Alternative Service by Federal Express

A. IT IS FURTHER ORDERED pursuant to Fed. R. Civ. P. 4(f)(3), as sufficient cause has been shown, that service may be made on, and shall be deemed effective as to Defendant if it is completed via Federal Express at Defendant's registered office address, Flat/RM F 6/F, Mega Cube, No. 8, Wang Kwong Road, KL, Hong Kong.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service ordered herein shall be deemed effective as to Defendant and Financial Institutions through the pendency of this action.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that such alternative service ordered herein shall be made within five (5) days of the Financial Institutions compliance with **Paragraphs III(A)** and **V(C)** of this Order.

D. IT IS FURTHER ORDERED, as sufficient cause has been shown, that service may be made and shall be deemed effective as to the following if it is completed by the below means:

   1) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

   2) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where AliPay will be able to download a PDF copy of this Order via electronic mail to Joyce Xiang at us_ipr_tro_requests@alipay.com;

   3) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Stripe Payments Canada, Ltd. will be able to download a PDF copy of this Order via electronic mail to notices@stripe.com;

   4) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Visa Inc. will be able to download a PDF copy of this Order via electronic mail to businessconduct@visa.com;

   5) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where American Express Company will be able to download a PDF copy of this Order via electronic mail to amexsru@aexp.com;

6)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Mastercard Inc. will be able to download a PDF copy of this Order via electronic mail to ipinquiries@mastercard.com;

7)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Discover Financial Services, Inc. will be able to download a PDF copy of this Order via electronic mail to civilsubpoena@discover.com.

8)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Apple, Inc. will be able to download a PDF copy of this Order via electronic mail to lawenforcement@apple.com;

9)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Google LLC will be able to download a PDF copy of this Order via electronic mail to google-legal-support@google.com;

10)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where JPMorgan Chase Bank, NA will be able to download a PDF copy of this Order via electronic mail to kristina.r.hall@jpmchase.com;

11)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com;

12)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com;

13) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex (Hong Kong) Limited and Airwallex (UK) Limited will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com;

14) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Worldpay (HK) Limited will be able to download a PDF copy of this Order via electronic mail to support@worldpay.com;

15) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where World First UK Ltd. will be able to download a PDF copy of this Order via electronic mail to complaints@worldfirst.com;

16) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Bank of China will be able to download a PDF copy of this Order via electronic mail to service.at@bankofchina.com;

17) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Citibank N.A. will be able to download a PDF copy of this Order via electronic mail to alyssa.mitchell@citi.com, renae.a.rodriguez@citi.com and lsi@citi.com;

18) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Green Dot Bank will be able to download a PDF copy of this Order via electronic mail to IR@greendot.com;

19) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where HSBC will be able to download a PDF copy of this Order via electronic mail to legal.paper.processing@us.hsbc.com;

20) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Shopify will be able to download a PDF copy of this Order via electronic mail to legal@shopify.com; and

21) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where DBS will be able to download a PDF copy of this Order via electronic mail to merchantservicing.hk@dbs.com, enquiry.hk@dbs.com and hkwarrants@dbs.com.

## V. Order Authorizing Expedited Discovery

A. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days after receiving service of this Order, Defendant shall serve upon Plaintiff's counsel a written report under oath providing:

   a. its true name and physical address;

   b. the name and location and URL of any and all websites that Defendant owns and/or operates.

   c. the complete sales records for any and all sales of Counterfeit Products, including but not limited to number of units sold, the price per unit, total gross revenues received (in U.S. dollars) and the dates thereof;

   d. the account details for any and all of Defendant's Financial Accounts, including, but not limited to, the account numbers and current account balances; and

   e. the steps taken by Defendant, or other person served to comply with **Section I**, above.

2) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendant who is served with this Order shall

13

provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

3) Plaintiff may serve requests for the production of documents pursuant to Fed. R. Civ. P. 26 and 34, and Defendant who is served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

B. IT IS FURTHER ORDERED, as sufficient cause has been shown, that within five (5) days of receipt of service of this Order the Financial Institutions served with this Order shall identify any and all of Defendant's Financial Accounts, and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include, at a minimum, identifying information for Defendant, including contact information for Defendant (including, but not limited to, mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendant's Financial Accounts and confirmation of said compliance with this Order.

C. IT IS FURTHER ORDERED, as sufficient cause has been shown, that:

1) Within fourteen (14) days of receiving actual notice of this Order, all Financial Institutions who are served with this Order shall provide Plaintiff's counsel all documents and records in their possession, custody or control (whether located in the U.S. or abroad) relating to any and all of Defendants' Financial Accounts, including, but not limited to, documents and records relating to:

a. account numbers;

b. current account balances;

    c. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents and if a business entity, any and all business documents provided for the opening of each and every of Defendant's Financial Accounts;

    d. any and all deposits and withdrawals during the previous year from each and every one of Defendant's Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    e. any and all wire transfers into each and every one of Defendant's Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number.

## VI.   **Security Bond**

A. IT IS FURTHER ORDERED that Plaintiff shall place security in the amount of 5,000 Dollars with the Court which amount is determined adequate for the payment of any damages any person may be entitled to recover as a result of an improper or wrongful restraint ordered hereunder.

## VII.   **Sealing Order**

A. IT IS FURTHER ORDERED that Plaintiff's Complaint and exhibits attached thereto, and Plaintiff's *ex parte* Application and the Declarations of Yira Dirocie and Gabriela N. Nastasi in support thereof and exhibits attached thereto, and this Order shall remain sealed until the Financial Institutions and Third Party Service Providers comply with **Paragraphs I(B), III(A) and V(C)** of this Order.

**SO ORDERED.**

SIGNED this 23rd day of October, 2024.

New York, New York

 

                                                HON. ANDREW L. CARTER
                                                UNITED STATES DISTRICT JUDGE